PS

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRIAN DWAYNE BROOKINS,
                          Plaintiff,

    v.

JONATHAN LAUREANO, et al.,
                          Defendants.
_____

Case No. 18-CV-0487-FPG

DECISION AND ORDER

## INTRODUCTION

*Pro se* Plaintiff Brian Dwayne Brookins brings this civil rights action against Defendants pursuant to 42 U.S.C. § 1983. ECF No. 4 ("Amended Complaint"). Plaintiff alleges that Defendants stopped him illegally and violated his Fourth Amendment right to be free from unreasonable searches and seizures. ECF No. 4 at 5-7. Following completion of discovery, Defendants moved for summary judgment. ECF No. 24. Plaintiff cross-moved for summary judgment. ECF Nos. 29, 33. For the reasons that follow, the Plaintiff's motion is DENIED, Defendant Amato's Motion is GRANTED in its entirety, and Defendant Laureano's Motion is GRANTED IN PART and DENIED IN PART.

## LEGAL STANDARD

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). While the court must view the evidence in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), a

1

party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).  The non-moving party may defeat a summary judgment motion by making a showing sufficient to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "[M]ere conclusory allegations or denials" are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980).

Because Plaintiff is proceeding *pro se,* his submissions are read liberally and interpreted "to raise the strongest arguments that they suggest." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (internal quotation marks omitted).  Nevertheless, proceeding *pro se* does not . . . relieve a litigant from the usual requirements of summary judgment." *See Wolfson v. Bruno*, 844 F. Supp. 2d 348, 354 (S.D.N.Y. 2011) (internal quotation marks omitted).

## DISCUSSION

**A.   Procedural History**

This action was commenced by Complaint filed on April 25, 2018.  ECF No. 1.  Plaintiff later filed the Amended Complaint, which is now the operative pleading, alleging that late on May 27, 2016, he was illegally stopped and falsely arrested by Defendant Laureano and early the next day, his car was illegally searched by Defendants Laureano and Amato. ECF No. 4 at 5. Plaintiff's state court criminal charges, which resulted from the stop, arrest, and search, concluded in his favor when the evidence was suppressed and the indictment dismissed.  *Id*.  Following review pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, Plaintiff's allegations of an illegal stop, false arrest, and illegal search and seizure were deemed sufficient to proceed to service.  ECF No. 6.

Plaintiff was also prosecuted in this Court based on the same stop and search. No. 17-CR-6019(CJS)(JWF). He was indicted and charged with four counts: unlawful possession with intent to distribute heroin and furanyl-fentanyl in violation of 21 U.S.C. § 841(a)(1); unlawful possession with intent to distribute cocaine also in violation of 21 U.S.C. § 841(a)(1); possession of a firearm in furtherance of drug trafficking crimes in violation of 18 U.S.C. § 24(c)(1)(A)(i); and possession of marijuana in violation of 21 U.S.C. § 844(a). No. 17-CR-6019(CJS)(JWF) at ECF No. 16. A probable cause hearing was held, the evidence seized in the arrest and search was suppressed, and the indictment dismissed with prejudice. *Id*. at ECF Nos. 73, 84.

Specifically, on September 11, 2018, United States District Court Judge Charles J. Siragusa found that: Defendant Laureano observed Plaintiff, who was driving a brand-new Dodge Durango with Canadian license plates, commit a minor traffic infraction[1] at approximately 9:30 P.M. on May 27, 2016. No. 17-CR-6019(CJS)(JWF), ECF Nos. 42 at 2, 73-1 at 3-5.[2] Laureano followed Plaintiff to see whether further infractions would be committed, observed Plaintiff pull into his driveway at 42 Kingston Street, again failing to signal the required 100 feet prior to turning, and parked behind him. No. 17-CR-6019(CJS)(JWF), ECF No. 42 at 3. Plaintiff exited the vehicle and refused repeated orders by Laureano to return to the vehicle. *Id*. at 4. Plaintiff was pepper sprayed by Laureano, ran to his backyard and fled on foot. *Id.* at 5. Plaintiff was apprehended and placed in a patrol car. *Id*. at 6.

Laureano learned that Plaintiff's license was suspended, and that the vehicle had been rented in Canada by someone Plaintiff identified as his wife, who was not present at the scene. *Id*.

---

[1] Failure to signal at least 100 feet prior to executing a turn in violation of N.Y. Vehicle and Traffic Law Section 1163(b) which provides "[a] signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning."

[2] Based on the submissions of the parties and on the Report and Recommendation of United States Magistrate Judge Jonathan W. Feldman. No. 17-CR-6019(CJS)(JWF), ECF No. 42.

3

Laureano decided to search the vehicle based on Plaintiff's suspended license and the smell of marijuana that he had noticed earlier. *Id*. Defendant Amato assisted in the search of the Durango, which revealed the suspected narcotics, drug paraphernalia, and a handgun. *Id*. at 6-7.

Judge Feldman recommended that suppression be denied based upon the government's argument that Plaintiff lacked standing because the vehicle was rented by another person. *Id*. at 14. However, the government later conceded that this ruling was superseded by an intervening United States Supreme Court decision[3] and abandoned that argument. No. 17-CR-6019(CJS)(JWF), ECF No. 73-1 at 5-7. The government also expressly abandoned the argument that Laureano's testimony that he smelled marijuana justified the search. *Id*. at 7. Further, the "government did not pursue search incident to arrest" as a theory of the search and instead argued inevitable discovery, thus conceding that Laureano's search was illegal. *Id*. at 8. The Court held that there was no need to tow the car, as it was parked legally in Defendant's driveway, and thus no inventory search was warranted. *Id*. at 15. The Court ruled that the inventory search argument—either that the search conducted at the scene was in fact an inventory search or that an inventory search would have been conducted later and produced the same results—was not valid because there was no basis to tow the car from Plaintiff's driveway. *Id*. at 17-19. The drugs and handgun were therefore suppressed, *id*. at 30, and the indictment was dismissed with prejudice in its entirety. No. 17-CR-6019(CJS)(JWF), ECF No. 84.

Following the completion of discovery in the instant action, Defendants moved for summary judgment based upon depositions and sworn affidavits from witnesses. ECF No. 24 (referring hereafter to the civil action, No. 18-CV-487). The facts Defendants rely on largely

---

[3] "[T]he mere fact that a driver in lawful possession or control of a rental car is not listed on the rental agreement will not defeat his or her otherwise reasonable expectation of privacy." *Byrd v. United States*, 138 S. Ct. 1518, 1531 (2018).

mirror the findings of Judge Siragusa and will not be repeated in full. On the night of May 27, 2016, Plaintiff was driving a 2016 Dodge Durango rented by the mother of his children, Kettia Misere. ECF No. 24-1 at 38-39. Defendant Laureano observed a new Dodge Durango with Canadian license plates and became suspicious, deciding to follow the vehicle and look for traffic infractions to justify a stop. ECF No. 24-2 at 2. Laureano observed the vehicle turn without engaging a turn signal 100 feet prior to the turn, as required. *Id*. Plaintiff pulled into the driveway at 42 Kingston, again failing to signal 100 feet prior to the turn. *Id*. Plaintiff, smelling of marijuana, resisted Laureano's attempts to detain him, and eventually fled. *Id*. at 3-4. After Plaintiff was apprehended, Laureano spoke with a female passenger in the Durango, who was not Misere, and again detected the odor of marijuana. *Id*. at 4. Subsequently, both Laureano and Amato searched the vehicle and located illegal narcotics and a handgun. *Id*. Defendant Amato, who searched the vehicle for approximately twenty minutes, did not smell marijuana, nor did Officer DiPaola who also assisted Laureano. *Id*. at 8.

Defendants argue that Laureano had probable cause to stop the Durango for multiple traffic infractions. ECF No. 24-7 at 10. They argue that the search of the vehicle was justified under the Fourth Amendment by probable cause to believe that marijuana would be found in the vehicle, and, alternatively, as an inventory search necessitated by Plaintiff's arrest for aggravated unlicensed operation of a motor vehicle. *Id*. at 12. They argue further that there was probable cause for Plaintiff's arrest on charges of obstructing governmental administration in the second degree ("OGA2") and aggravated unlicensed operation of a motor vehicle. *Id*. at 19-20; *see* N.Y. Penal Law § 195.05. Defendants argue that they are entitled to qualified immunity because officers of reasonable competence could disagree on whether probable cause for the search and arrest was present. *Id*. at 21. Finally, Defendant Amato argues that he was not involved in the stop or arrest

and is entitled to qualified immunity because he reasonably relied on the determination by Defendant Laureano that there was probable cause to conduct the search. *Id*. at 21-22.

Plaintiff cross-moved for summary judgment, arguing that the prior decisions in his prosecution bar the Defendants from "relitigating the issues that have already been decided upon." ECF No. 29 at 4. Plaintiff argued that the doctrine of *res judicata* barred Defendants from contesting his claims of false arrest and illegal search. *Id*. at 5. Plaintiff supplemented this motion with a second motion for summary judgment, making the same argument and attaching the decisions which suppressed the evidence in Plaintiff's prosecution. ECF No. 33. The Court will consider both of Plaintiff's motions and treat them as a single motion for summary judgment. Plaintiff opposes Defendants' motion for summary judgment, arguing that Laureano lacked probable cause to stop him for any traffic infraction. ECF No. 36 at 5.[4] Plaintiff argues further that the search of his car was without probable cause and notes specifically the decision of the government not to rely on Laureano's testimony that he smelled marijuana both on Plaintiff and in the Durango. *Id*. at 8.

Defendants oppose Plaintiff's motion for summary judgment. ECF No. 34. Defendants argue first that Judge Siragusa's decision dealt only with the validity of the search of the Durango and did not impugn the validity of the stop of the Durango or Plaintiff's arrest. *Id*. at 10-11. Defendants further argue that the relevant legal doctrine applicable to the prior court rulings is collateral estoppel and not *res judicata*. *Id*. at 12. Defendants were not parties to either prosecution, they argue, and therefore are not bound by the outcomes of those prosecutions. *Id*. As to collateral estoppel, Defendants argue that the issues in the criminal prosecution and the

---

[4] Plaintiff also makes arguments regarding his claims of malicious prosecution. ECF No. 36 at 7-8. However, because these claims were dismissed with prejudice, *see* ECF No. 6, they are not before the Court and will not be addressed further.

6

instant action are related, but not the same. *Id*. at 13. Finally, Defendants note that the affirmative defense of qualified immunity was not relevant to the criminal prosecution and cannot therefore be precluded as a defense in the civil action. *Id*. Defendants note particularly the government's decision to abandon certain arguments raised here as evidence that Defendants did not have a full and fair opportunity to raise the arguments which were abandoned by the prosecution. *Id*. at 14. Plaintiff filed a response, repeating the arguments he had made in his own motion and adding that collateral estoppel should apply to bar Defendant's claims. ECF No. 37.

**B.      Analysis**

   **i.      The Standard for the Stop of Plaintiff's Vehicle**

"When an officer observes a traffic offense—however minor—he has probable cause to stop the driver of the vehicle." *United States v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994) (quoting *United States v. Cummins*, 920 F.2d 498, 500 (8th Cir. 1990)). "[T]here was probable cause to stop and arrest . . . officers directly observed him violating the traffic laws by not signalling lane changes." *Id*. Furthermore, "it is well established that an officer's use of a traffic violation as a pretext to stop a car in order to obtain evidence for some more serious crime is of no constitutional significance." *United States v. Gomez*, 877 F3d 76, 97 (2d Cir. 2017) (internal quotation marks omitted).

Plaintiff alleges that the street he was traveling on, Garson Avenue, was too short to permit him to signal his turn the required one-hundred feet before he turned, while Defendants allege that the relevant part of the street was two-hundred feet long, giving ample time to signal as required. ECF No. 24-7 at 10. This dispute, however, represents a genuine issue of material fact. Furthermore, nothing in the record indicates that there was any suppression decision based on the illegality of the stop; suppression was based only upon a determination that the search was

unwarranted.  ECF No. 33 at 42.  Thus, as to the legality of the stop of Plaintiff's vehicle, there are issues of material fact which preclude the grant of summary judgment as to either party.[5]

### ii. The Standard for False Arrest

Plaintiff claims false arrest, but in his motion argues only that the search was unlawful. ECF No. 29 at 2; ECF No. 33 at 3-4.  "It is well settled in this Circuit that an observed traffic violation is 'a specific and articulable fact' sufficient to justify the search and seizure of a vehicle under the Fourth Amendment."  *United States v. Figueroa*, 425 F. App'x 15, 17 (2d Cir. 2011) (summary order) (quoting *United States v. Scopo*, 19 F.3d 777, 781 (2d Cir. 1994)).  Defendants address the false arrest claim and note correctly that the "existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest."  ECF No. 24-7 at 18 (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).

Obstructing governmental administration "requires one of the following: (1) intimidation, (2) physical force or interference, or (3) any independently unlawful act. Any interference must be physical and must obstruct an official function authorized by law."  *Dancy v. McGinley*, 843 F.3d 93, 111 (2d Cir. 2016) (internal citations, quotation marks and alterations omitted).  Before Defendant Laureano placed Plaintiff under arrest, he claims that Plaintiff refused to comply with directives, smelled of marijuana, squared up to resist arrest, and fled the scene of the traffic stop. No. 17-CR-6019(CJS)(JWF), ECF No. 42 at 3-5.  Thus, if a jury were to credit Laureano's testimony, there was ample basis for Plaintiff's arrest.  As with the stop itself, there are issues of material fact which preclude the grant of summary judgment as to either party.

---

[5] The question of the defense of qualified immunity as to the stop and arrest will be addressed separately.

### iii. The Fourth Amendment Standard for Searches

#### a. Overview

"Warrantless searches are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *United States v. Howard*, 489 F.3d 484, 492 (2d Cir. 2007) (internal quotation marks omitted). However, under "the automobile exception, police may conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime." *Id.* (quoting *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir.2004)).

#### b. Defendants are not Barred by Collateral Estoppel

Plaintiff argues that the suppression of the gun and drugs in two prosecutions bars the Defendants from contesting the validity of the search because the issues decided are subject to *res judicata*. However, "[w]hen a civil trial follows criminal proceedings which were based on the same facts, a different cause of action is involved and the doctrine of collateral estoppel rather than that of *res judicata* must be considered." *Neaderland v. C. I. R.*, 424 F.2d 639, 641 (2d Cir. 1970); *see also Cobb v. Pozzi*, 363 F3d 89, 114 (2d Cir. 2004).

> Under federal law, collateral estoppel applies when (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.

*Pappas v. Lorintz*, 832 F. App'x 8, 11 (2d Cir. 2020) (quoting *Purdy v. Zeldes*, 337 F.3d 253, 258 (2d Cir. 2003)), *cert. denied* 209 L. Ed. 2d 754 (May 17, 2021).

Here, the prosecutions were brought by New York State and the United States government, not by Defendants. Additionally, arguments which Defendants now seek to raise concerning the validity of the search were conceded by the government. Specifically, the government opposed suppression only by arguing inevitable discovery, which conceded the illegality of the search. No.

9

17-CR-6019(CJS)(JWF), ECF No. 73-1 at 5.  Defendants had no ability to argue otherwise because they were not parties in the criminal action.  The holding that officers are not subject to collateral estoppel

> results from the fact the arresting officers were witnesses but not parties to the prosecution of the underlying criminal case and the police are not sufficiently in privity with the District Attorney who prosecuted the criminal case to provide a basis for application of collateral estoppel on the probable cause issue.

*Haynes v. Acquino*, No. 10-CV-355F, 2015 WL 13548490, at *1 (W.D.N.Y. Sept. 16, 2015).  This is particularly appropriate here, where Defendants were merely state employees involved in a federal criminal action.  No. 17-CR-6019(CJS)(JWF).  Therefore, Defendants did not have a full and fair opportunity to litigate their potential defenses in the criminal prosecutions, are not barred by either *res judicata* or collateral estoppel.

        **iv.**    **Qualified Immunity**

            **a.**    **The Standard for Qualified Immunity**

"The doctrine of qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Soto v. Gaudett*, 862 F.3d 148, 156 (2d Cir. 2017) (internal quotation marks and brackets omitted).  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (internal quotation marks omitted).  "To determine whether a defendant is entitled to qualified immunity, courts ask whether the facts shown 'make out a violation of a constitutional right' and 'whether the right at issue was "'clearly established'" at the time of defendant's alleged misconduct.'" *Estate of Devine*, 676 F. App'x 61, 62 (2d Cir. 2017) (summary order) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

Defendants argue that, even if the search was unlawful, they are protected by qualified immunity. "Qualified immunity protects an officer so long as he had arguable probable cause to arrest, which exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016) (internal quotation marks omitted). On the other hand, an "officer is not entitled to qualified immunity if no officer of reasonable competence could have made the same choice in similar circumstances." *Id*. (quoting *Lennon v. Miller*, 66 F.3d 416, 420-21 (2d Cir. 1995)). Thus, Defendants are entitled to qualified immunity as to the stop, arrest, and search "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Varrone v. Bilotti*, 123 F.3d 75, 78 (2d Cir. 1997) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987)).

Again, "[a]rguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id*. (internal quotation marks omitted) (citing *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002) ("[I]n situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity.")). The Second Circuit concluded that "the analytically distinct test for qualified immunity is more favorable to the officers than the one for probable cause" and that "arguable probable cause" suffices to confer qualified immunity. *Id*.

b.   **Defendant Amato**

Defendant Amato was not present until after Plaintiff was stopped and arrested and is not implicated in any alleged illegality in the stop or arrest. ECF No. 24-7 at 21. Also, Amato's participation in the search "was based entirely upon information he learned from Officer

11

Laureano." *Id*. "Plausible instructions from a superior or fellow officer support qualified immunity where, viewed objectively in light of the surrounding circumstances, they could lead a reasonable officer to conclude that the necessary legal justification for his actions exists." *Anthony v. City of N.Y.*, 339 F.3d 129, 138 (2d Cir. 2003) (internal quotation marks omitted); *see also Lumpkin v. Brehm*, 15 CIV. 839 (KPF), 2018 WL 2768641, at *8 (S.D.N.Y. June 8, 2018) (collecting cases). Defendant Amato therefore relied on the probable cause determination of Defendant Laureano and is entitled to qualified immunity so long as

> no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff[], could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right.

*Koller v. Hilderbrand*, 933 F. Supp. 2d 272, 283 (D. Conn. 2013) (illegal search) (quoting *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999).

Even viewing the evidence in the light most favorable to Plaintiff, no reasonable juror could conclude that Amato, relying entirely on Laureano, was aware that the search was in violation of Plaintiff's constitutional rights. Plaintiff has offered no argument that Amato had reason to know that Laureano's assessment of probable cause was mistaken, and thus no basis to argue that Amato was not entitled to rely on Laureano's judgment. Amato is therefore entitled to summary judgment based upon qualified immunity. *See Martinez v. Simonetti*, 202 F.3d 625, 635 (2d Cir. 2000) ("It is not unreasonable for police officers to rely on the accounts provided by other officers at the scene, even when confronted with conflicting accounts."); *see also Duran v. Sirgedas*, 240 F. App'x 104, 114 (7th Cir. 2007), *vacated in part on reh'g* (July 17, 2007) (citing *Simonetti* for the proposition that "[a]n officer may reasonably rely on information provided by other officers").

   c.  **Defendant Laureano**

    i.  **Introduction**

  The Court analyzes the misconduct attributed to Defendant Laureano by "carv[ing] up the incident into segments and judg[ing] each on its own terms to see if the officer was reasonable at each stage". *Plakas v. Drinski*, 19 F.3d 1143, 1150 (7th Cir. 1994). Furthermore, when evaluating the two prongs of qualified immunity, "[c]ourts have discretion to decide the order in which to engage these two prongs." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

    ii.  **Qualified Immunity as to the stop of Plaintiff's Vehicle**

  Plaintiff opposes Defendants' summary judgment motion, alleging that "he could not engage his signal continuously for 100 feet because the stretch of Garson Avenue from Greeley Street to Kingston Street was too short to comply." ECF No. 36 at 6. This argument fails to address the second basis for the stop: Plaintiff's failure to signal 100 feet prior to his turn into the driveway on Kingston Street. ECF No. 24-7 at 3.

  While the exact distance Plaintiff traveled after signaling and before turning is a question of fact, the issue is whether the Defendant Laureano had reasonable cause to believe that Plaintiff had violated the Vehicle and Traffic Law, not whether he was correct. In other words, the issue is whether Officer Laureano's "belief that [Plaintiff] had committed a traffic infraction, [even if] mistaken, [was] objectively reasonable under the circumstances." *United States v. Wofford*, Case No. 6:19-CR-06061 EAW, 2021 WL 1044313, at *2 (W.D.N.Y. Mar. 19, 2021) (upholding stop for failing to signal 100 feet before turning at a stop sign). A police officer, observing a moving vehicle in real time while also operating his own vehicle, need not "be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them fair leeway

13

for enforcing the law in the community's protection." *Heien v. North Carolina*, 574 U.S. 54, 60-61 (2014) (internal quotation marks omitted).

Plaintiff offers no argument that Laureano's belief that Plaintiff had failed to signal 100 feet prior to his turn was, even if mistaken, unreasonable under the circumstances. "As it relates to the second step, the focus is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Jones v. Treubig*, 963 F.3d 214, 224 (2d Cir. 2020) (internal quotation marks omitted). Plaintiff argues only that the street was actually shorter than 100 feet; he does not argue and provides no support for the proposition that it was so much shorter than 100 feet that no reasonable officer could believe otherwise. Because, even accepting Plaintiff's facts, no reasonable juror could find that it was objectively unreasonable for Laureano to believe, even if mistakenly, that his conduct did not violate Plaintiff's rights, he is entitled to summary judgment as to the stop on the grounds of qualified immunity. *See, e.g.*, *Ricciuti v. N.Y.C. Tr. Auth.*, 124 F.3d 123, 127 (2d Cir. 1997).

### iii. Qualified Immunity as to the Arrest of Plaintiff

Plaintiff does not dispute the allegation that he was driving with a suspended license. ECF No. 24-6 ¶ 31. Nor does he contest the fact that he fled, which also formed a basis for his arrest. *Id*. at ¶ 29. Therefore, no reasonable juror could find that it was objectively unreasonable for Defendant Laureano to believe that Plaintiff's arrest did not violate Plaintiff's rights, and he is entitled to summary judgment as to the arrest on the grounds of qualified immunity.

### iv. Qualified Immunity as to the Search of Plaintiff's Vehicle

Defendant Laureano argues that the search of the Durango was justified for two reasons. First, there was probable cause to search the vehicle for contraband. ECF No. 24-7 at 13. In the

alternative, he argues that the search of the Durango, although conducted at the scene, was itself a valid inventory search because, he asserts, the vehicle would have been towed. *Id*. at 15.[6]

The Court finds that there are genuine issues of material fact which preclude summary judgment. Laureano testified that he smelled marijuana, and if credited by the jury, this would provide probable cause to believe that contraband could be found in the car. *See Costello v. Milano*, 20 F. Supp. 3d 406, 419 N12 (S.D.N.Y. 2014) (collecting cases). However, viewing the evidence in the light most favorable to Plaintiff, as the Court must, there exists a genuine issue of material fact as to Laureano's claim that he smelled marijuana. Defendant Amato searched the car for twenty minutes, and another officer assisted as well, and neither officer encountered the smell of marijuana. Thus, justification for the search for contraband depends on the jury's decision to credit Defendant Laureano's version of events, and therefore precludes summary judgment. *See, e.g.*, *Curry v. City of Syracuse*, 316 F.3d 324, 336 (2d Cir. 2003) (because the jury could also find, if it disbelieved Defendant's testimony that he smelled marijuana, that "no reasonable officer in [his] position would have believed it was lawful" to search the automobile on the basis of the nonexistent smell of marijuana).

As to the claim that the search conducted was in fact a valid inventory search, viewing the evidence in the light most favorable to non-moving party, the inventory form indicated that the actual inventory search was conducted based on the discovery of the items found in Laureano's search at the scene. The suppression court found no basis for an inventory search, and while this is not a basis for collateral estoppel, the inventory form supports an inference that the search was

---

[6] As to the arrest of Plaintiff, Defendant Laureano is entitled to qualified immunity as noted. However, under *Arizona v. Gant*, 556 U.S. 332 (2009), the search could not be justified as one incident to a lawful arrest unless it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Id*. at 343 (quoting *Thornton v. US*, 541 U.S. 615 (2004)). The Supreme Court noted that "when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence." *Id*. The same is true of the crime of obstructing governmental administration under New York law. *See* Section B(ii), *supra*.

15

not conducted on the basis offered by Defendant Laureano. Therefore, again, a jury would have to credit Defendant Laureano's testimony to find qualified immunity on this basis, and there is a genuine issue of material fact whether the search was justified as an inventory search, particularly given Defendant Laureano's admission that the entire purpose of the traffic stop was his educated hunch that drug-related activity was afoot.

> It is well-established that Plaintiff has a right to be free from inventory searches that are not administered in good faith and on the basis of something other than suspicion of criminal activity. If, as Plaintiff has alleged, [Defendant] conducted the inventory search solely for the purpose of investigating criminal conduct, without [sufficient] cause to believe Plaintiff was involved in any such conduct, then [Defendant] acted in violation of that well-established right.

*Hawthorne v. County of Putnam*, 492 F. Supp. 3d 281, 301 (S.D.N.Y. 2020) (citation omitted). Moreover, drawing all inferences in Plaintiff's favor, the Court cannot conclude, as a matter of law, that a reasonable officer in Defendant's position would have mistakenly believed his conduct to be lawful. Thus, Defendant Laureano is not entitled to qualified immunity as to the search of the Durango at this juncture.

## CONCLUSION

For these reasons, the Court finds that Defendant Amato is entitled to qualified immunity, and Amato's Motion for Summary Judgment, ECF No. 24, is GRANTED.[7] Plaintiff's Motion for Summary Judgment, ECF Nos. 29, 33, is DENIED in its entirety. Defendant Laureano's Motion for Summary Judgment, ECF No. 24, is GRANTED IN PART and DENIED IN PART.

The matter is set for a status conference to set a trial date on October 21, 2021 at 3:00 P.M.

---

[7] The Clerk of Court is respectfully directed to terminate Defendant Amato as a party to this action.

IT IS SO ORDERED.

Dated: September 14, 2021
       Rochester, New York

                                                      _____
                                                      FRANK P. GERACI, JR.
                                                      UNITED STATES DISTRICT JUDGE
                                                      WESTERN DISTRICT OF NEW YORK